IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RODERICK L. MILES,                )
                                  )
              Plaintiff,          )
                                  )
     v.                           )    1:18CV132
                                  )
ANDREW SAUL,                      )
Commissioner of Social Security,[1] )
                                  )
              Defendant.          )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Roderick L. Miles ("Plaintiff"), proceeding *pro se*, brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment,[2] and the administrative record has been certified to the Court for review.

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff, proceeding *pro se*, has filed a document entitled "Brief" [Doc. #14]. This Court is required to construe such *pro se* pleadings liberally to allow for the development of a potentially meritorious claim. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). The Court will therefore liberally construe Plaintiff's brief as a motion for judgment on the pleadings.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on May 25, 2012, alleging a disability onset date of May 13, 2012. (Tr. at 19, 352-357.)[3] His application was denied initially (Tr. at 195-204) and upon reconsideration (Tr. at 208-216). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 218-219.) Plaintiff, along with his representative and an impartial vocational expert ("VE"), attended the subsequent hearing on February 25, 2014. (Tr. at 50.) The ALJ concluded on June 20, 2014 that Plaintiff was not disabled within the meaning of the Act. (Tr. at 175-185.) On November 23, 2015, the Appeals Council granted Plaintiff's request for review of the decision, and remanded the matter for consideration of a prior administrative decision as well as evidence that was not previously associated with the file. (Tr. at 190-192.) Plaintiff, along with counsel and an impartial VE, attended a new hearing on January 25, 2017. (Tr. at 75.) The ALJ concluded on May 23, 2017 that Plaintiff was not disabled within the meaning of the Act. (Tr. at 19-40.) On October 2, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 6-10.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d

---

[3] Transcript citations refer to the Sealed Administrative Record [Doc. #12].

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir.

1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

### III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity since May 25, 2012, the application date." (Tr. at 22.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> reactive airways disease secondary to chemical exposure with arrhythmia and heart palpitations; superior labral tear with posterior extension to the left

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

shoulder; right shoulder pain status-post arthroscopic subacromial decompression; headaches; gastroesophageal reflux disease (GERD); depression; anxiety; and posttraumatic stress disorder (PTSD).

(Id. at 23.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Id.) The ALJ then assessed Plaintiff's RFC and determined that he could perform light work, with the following additional limitations:

> occasional climbing stairs or ramps and no climbing ropes, ladders, or scaffolds. He can perform occasional balancing, crouching, stooping, kneeling, and crawling. The claimant can perform frequent reaching in all directions, including overhead reaching with the bilateral upper extremities and frequent handling, fingering, and feeling with the bilateral upper extremities. He must avoid concentrated exposure to extreme temperatures, humidity, wetness, vibrations, pulmonary irritants, and workplace hazards. The claimant is limited to simple, routine, repetitive tasks involving <u>no more than simple, short instructions and simple work-related decisions</u> with few workplace changes. He can have occasional contact with supervisors, coworkers, and the public. The claimant requires the opportunity to alternate between sitting and standing every two hours at the workstation, with standing and walking a total of four hours in an eight-hour workday.

(Tr. at 26-27 (emphasis added).) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform any past relevant work. (Tr. at 38.) The ALJ also determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the VE as to these factors, he could perform other jobs available in the national economy. (Tr. at 39.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act from May 25, 2012, the application date. (Tr. at 40.)

Plaintiff argues that the ALJ erred in a number of respects. First, Plaintiff contends that he "may . . . meet listing 14.09D due to his severe impairments and heart palpitations." (Pl.'s Br. [Doc. #14] at 3.) Second, Plaintiff challenges the weight attributed by the ALJ to the medical opinions of both Plaintiff's treating physicians and consultative examiners. (Id. at 2;

6

Pl.'s Resp. [Doc. #18] at 2-4.) Third, Plaintiff also alleges that "[a]t step 5, other work is also precluded by [his] cognitive impairments." (Pl.'s Br. at 3.) Fourth, Plaintiff contends that a 2018 physical evaluation provided by one of his treating physicians, which was never presented to the commissioner, demonstrates that he is completely disabled. (Pl.'s Resp. at 2-3.)

It is Plaintiff's third argument—that he cannot perform other work at step five because of his cognitive impairments—that is of particular concern here. Plaintiff contends that other work is precluded at step five because he has substantial loss of ability to understand, remember, and carry out simple instructions, make judgments commensurate with those required by unskilled work, respond appropriately to supervisors and the public, and deal with changes in a routine work setting. (Pl.'s Br. at 3.) While this argument is brief, the Court concludes that it fairly encompasses a challenge to the ALJ's step five analysis with respect to his cognitive impairments, particularly in light of this Court's obligation to construe pro se pleadings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed"). As explained in detail below, an assessment of the ALJ's step five analysis here raises significant concerns, because the ALJ in this case "has not fully developed [a] record [that] contains an unresolved conflict between the [VE's] testimony and the Dictionary [of Occupational Titles]." Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). Specifically, it appears that all of the occupations identified by the ALJ and the VE require a Reasoning Level in the Dictionary of Occupational Titles that exceeds the RFC formulated by the ALJ, as discussed below.

The Fourth Circuit Court of Appeals has recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and

7

the provisions of the Dictionary of Occupational Titles ("DOT"), regardless of whether a conflict is identified by the VE. Pearson, 810 F.3d at 208-09, 210. In Pearson, because of this apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable "explanation from the expert" before relying on the expert's testimony. Id. at 208-209, 211. In 2019, in Thomas v. Berryhill, the Fourth Circuit applied the principles articulated in Pearson as they related to the DOT's Reasoning Development scale. See Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019), as amended (Feb. 22, 2019). That scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702.[5] The DOT assigns a Reasoning Development Level to each occupation identified therein. In Thomas, the Fourth Circuit explained:

> An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that

---

[5] Reasoning levels 1 through 3 are defined as follows:

LEVEL 3

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702.

end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. Id. But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." Id. at 209.

. . . .

The VE's testimony in this case contains a comparable conflict with the DOT. After being informed of Thomas's RFC, the VE testified that Thomas was capable of holding three jobs: marker, final inspector, and order caller. [T]he DOT states that all three of the jobs identified by the VE require employees to "carry out detailed but uninvolved written or oral instructions . . . ." DOT 209.587-034, 1991 WL 671802; DOT 727.687-054, 1991 WL 679672; DOT 209.667-014, 1991 WL 671807. By comparison, Thomas's RFC limits her to jobs that involve only "short, simple instructions."

We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson. Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

Id. at 313-314.

Consequently, in Thomas, the Fourth Circuit held that there was an apparent conflict between jobs requiring Level 2 reasoning and a limitation to "short, simple instructions." Id.; see also Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) ("In Thomas v. Berryhill, this court found an apparent conflict between the claimant's residual functional capacity, which limited her to jobs involving 'short, simple instructions,' and Level 2's concept of 'detailed but uninvolved instructions.'"). Since reasoning levels ascend in levels of complexity, Thomas

therefore stands for the proposition that there is an apparent conflict between jobs requiring Level 2 reasoning or higher, and a limitation to "short, simple instructions."

The ALJ in this case ran afoul of the holding in Thomas. In this case, as in Thomas, both the ALJ's RFC determination and the hypothetical to the VE limited the claimant to the performance of "tasks involving no more than simple, short instructions." (Tr. at 26, 99.) Yet, as in Thomas, the jobs that the VE testified, and the ALJ found, that the claimant could perform all require Level 2 reasoning or higher and, therefore, involve performing at least "detailed but uninvolved written or oral instructions." (Tr. at 39, 100 (referencing Office Helper, DOT 239.567-010, 1991 WL 672232 ("Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."); Mail clerk, DOT 209.687-026, 1991 WL 671813 ("Reasoning: Level 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."); File Clerk, DOT 206.387-034, 1991 WL 671737) (same)).)[6] As in Thomas, the ALJ in this case was therefore faced with an apparent conflict between the testimony of the VE and the DOT and, as a result, had an independent and affirmative duty to resolve this apparent conflict. At

---

[6] The VE here also testified that there were three additional jobs that a hypothetical claimant with Plaintiff's limitations could perform at the sedentary level. (Tr. at 101.) However, the ALJ did not rely on these jobs in his decision. Moreover, all three of these additional jobs also required Level 2 reasoning or higher and therefore would be insufficient to cure or render harmless the ALJ's failure to identify and resolve the apparent conflict discussed above. (Id. referencing Addresser, 209.587-010, 1991 WL 671797 ("Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."); Document Preparer, 249.587-018, 1991 WL 672349 ("Reasoning: Level 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."); and Surveillance System Monitor 379.367-010, 1991 WL 673244 (same).)

the hearing, the VE noted the lack of DOT guidance with respect to a sit-stand option and with respect to a limitation to occasional interaction with co-workers and supervisors, but did not address any potential conflict with respect to the Reasoning Level or the limitation to "short, simple instructions." (Tr. at 40, 100-02.) Because the ALJ in this case did not address this apparent conflict between the VE's testimony and the DOT, it remains unresolved and—consistent with the outcome in Thomas—remand is proper.

None of this necessarily means that Plaintiff is disabled under the Act and the Court expresses no opinion on that matter. Nevertheless, the Court concludes that the proper course here is to remand this matter for further administrative proceedings. To the extent Plaintiff raises any other issues in his motion for judgment on the pleadings, the Court need not consider those additional issues at this time, as the ALJ on remand will have the opportunity to consider all of the evidence and Plaintiff's contentions in making a determination.

Last, Plaintiff has filed a document entitled a "Motion for Leave to Amend Complaint and Pleadings of Memorrandum [sic] Opposing the Commissioners [sic] Motion for Judgement on the Pleadings" [Doc. #19]. In it, Plaintiff moves to amend his complaint to request "back pay" from September 7, 2010. Plaintiff also asserts that he has attached an amended complaint to this motion; however, what Plaintiff has actually attached are five exhibits containing what appear to be new medical records. The Commissioner filed a Response, contending that this request is untimely and objecting to the inclusion of new medical evidence into the record on the grounds that "Plaintiff's submission does not relate to his condition during the relevant time period, but rather pertains to his condition more than a year and a half after the relevant period ended. Moreover, the evidence does not create a

11

reasonable probability (or even a possibility) that the outcome of the decision would change because it does not demonstrate a loss of functioning." (Def. Resp. [Doc. #20] at 2-3.)

Having considered Plaintiff's Motion, the Court notes that the time to amend as of right has long since passed, and the Commissioner has not consented to an amendment. Moreover, as explained above, because the ALJ did not resolve the conflict at step five, remand is required. It would be futile for Plaintiff to amend his complaint at this point, and Plaintiff's motion is essentially moot. Plaintiff may address the issues raised in his motion with the ALJ on remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Brief, which the Court has construed as a Motion for Judgment on the Pleadings, [Doc. #14] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's "Motion for Leave to Amend Complaint and Pleadings of Memorrandum [sic] Opposing the Commissioners [sic] Motion for Judgement on the Pleadings" [Doc. #19] should be DENIED as moot.

This, the 10th day of February, 2020.

                                               /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge